FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

2009 NOV -4  P 4: 43

CLERK ...... COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| HANH NGUYEN ALLGOOD, <br> Plaintiff, <br><br> v. <br><br> WILLIAMS MULLEN, P.C., <br> Defendant | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case Number: 2:09cv557 <br> ) <br> ) <br> ) |

**JURY TRIAL REQUESTED**

**CIVIL COMPLAINT FOR EQUITABLE AND
MONETARY RELIEF AND DEMAND FOR JURY TRIAL**

1. This action arises out of the discriminatory treatment of Hanh Nguyen Allgood ("Allgood") based upon her national origin (Vietnamese) and gender (female) throughout the course of her 18 years of employment with the Defendant. Allgood asserts claims of national origin discrimination, age discrimination, sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq., sexual harassment.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

2. Allgood has exhausted her administrative remedies. Allgood filed a complaint alleging discrimination and retaliation with the United States Equal Employment Opportunity Commission (EEOC) on March 23, 2007. Allgood received a Notice of Right to Sue from the EEOC closing the Complaint on August 6, 2009. Allgood filed suit within 90 days of her receipt of the Notice of Right To Sue.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5 and its pendent jurisdiction over state claims. All jurisdictional predicates have been met.

4. Venue is proper in this District under 42 U.S.C. § 2000e-5 because this is the judicial district in which the cause of action arose and discriminatory practices occurred.

## PARTIES

5. Allgood, a 53 year old Vietnamese woman, was employed as the Records Manager for Williams Mullen ("Defendant" or "Firm") from July 1989 until March 2007. She started in Defendant's Richmond office and was transferred to the Virginia Beach office in July, 2003.

6. Defendant is a full service law firm headquartered in Richmond, VA with offices in North Carolina, Washington, DC and throughout the Commonwealth of Virginia.

## STATEMENTS OF FACTS

7. Allgood was responsible for (a) managing all firm wide inactive records stored in various warehouses, (b) assigning filing cabinets for active files, (c) managing firm personnel to provide labels/files on active files and (d) coordinating and supervising location moves – to include new hires and relocations.

8. Allgood's duties also consisted of traveling to Defendant's various offices to conduct training classes for legal staff firm wide. Allgood, with the help of the firm trainer (Linda Lyles), created and maintained the Records Management pages on the Firm Intranet.

9. Despite her stellar performance, several of Defendant's managing partners and senior associates engaged in unbridled discriminatory acts toward Allgood based on her national origin and gender.

10. Robert E. Eicher ("Eicher"), a Firm partner, repeatedly engaged in inappropriate sexual behaviors and made ethnic slurs. Shortly after Allgood's hire, Eicher approached Allgood in her cubicle, introduced himself and asked if she was from Viet Nam. When Allgood responded in the affirmative, he then gestured toward her genital area and asked whether her vagina was horizontal or vertical. His inquiry obviously referenced a horrible racial slur bandied about by some American soldiers during the Viet Nam War contending that Vietnamese women had vertical vaginas.

11. Allgood was horrified, embarrassed and humiliated. She responded by instructing Eicher to go home and ask his wife about her vagina, and then walked away.

12. In late summer 2007, Allgood went to Eicher's office to discuss a work-related issue. He was on the phone at the time. Allgood conversed with Eicher's secretary while waiting for his call to end. When his call ended, Allgood walked in his office and said, "I told Pat that I was waiting for the big man." Sitting in his chair, Eicher looked down in his lap then looked up at Allgood and asked, "How did you know?"

13. Allgood complained of this incident to Beth James ("James"), Firm Administrator and Mary Fuller ("Fuller"), Richmond Office Manager. However, no action was taken in response to Allgood's complaint.

14. Eicher often walked around the firm dressed as a doctor showing his gloves and asking female staff if they wanted to be "examined."

15. Eicher also had several sexual relationships with employees and publicly described his sexual encounters with them.

16. In late September 2006, Eicher touched Allgood in a sexual manner. The incident occurred while she was riding the elevator in Defendant's offices. Eicher entered the elevator and saw Allgood standing in it alone. He stepped on to the elevator. When the doors closed, Eicher pretended to be sad and depressed. He asked Allgood for a hug. When she complied, he pressed his genital area against Allgood's left thigh. Allgood felt something hard pressing against her thigh and attempted to pull away from him. Eicher held Allgood tighter to prevent her from pulling away, and pressed his genital area against her thigh even harder. Allgood was horrified. She pushed him away and stepped back. In response, Eicher laughed and pulled a cucumber out of his pants pocket.

17. When the elevator stopped, Allgood immediately complained to management about Eicher's behavior. She complained to both James and Fuller about Eicher's inappropriate sexual touching. In response to Allgood's complaint neither Fuller nor James took any action whatsoever.

18. Following the incident, Allgood discussed it with other female staff in the Firm. Several female employees informed Allgood that they were also the victims of the "cucumber incident."

19. Because Firm management took no action whatsoever in response to Allgood's repeated complaints of sexual harassment, the harassment did not end. In fact, it became more acute over time. Allgood continued to toil in a sexually hostile work environment.

20. During Allgood's 18 years of employment with Defendant, the Firm held only one Firm-wide training course on sexual harassment.

21. Following Allgood's complaints of sexual harassment, Defendant's managers embarked on a campaign of retaliation.

22. Allgood's immediate supervisor withheld important information from Allgood necessary to perform her job. He also made inappropriate comments and inquiries regarding Allgood's age and significantly reduced her responsibilities by assigning her duties to younger workers.

23. The environment became so hostile that Allgood requested the presence of Fuller during any conversation with Allgood's immediate supervisor.

24. In December 2006, Allgood reported the abuse to Thomas Frantz, President of the Firm, who promised Allgood that things would get better. Allgood complained to Frantz that if she were a white American man, her supervisor would not have treated her this way. Contrary to Mr. Frantz's promises, her supervisors treated Allgood worse than ever.

25. Not only was Allgood subjected to on-going sexual harassment, retaliation and age discrimination, she was also harassed and discriminated against based on her national origin, Vietnamese.

26. For instance, in Allgood's February 20, 2007 review, her immediate supervisor instructed her to "train someone else to do the training." When Allgood asked for the reason, he said "because people may have problems with your accent." Another firm trainer has a British accent.

27. Allgood frequently brought home-cooked meals to the Firm for its annual holiday parties. Douglas Nabhan, a Firm partner, often made racially derogatory comments about Allgood's meals insinuating that she prepared her meals with dogs and cats. He would often

5

joke publicly at the Firm holiday party "the population of dogs and cats in your town dropped dramatically last night" when referring to Allgood's meals.

28. Nabhan also referred to Allgood's ex-husband as "the wet back" because he is Hispanic.

29. Unfortunately, Nabhan was not the only Firm partner who made offensive ethnic slurs and comments to and about Allgood. Eicher often asked Allgood whether she ate "dog fricassee," "rice paddies" or "rats" for dinner. He also referred to Allgood as "black pajama" on a regular basis. Finally, Eicher frequently insulted Allgood by stating "that's why we lost the war" after she spoke. Eicher often made these comments in the presence of other people to publicly embarrass and humiliate her.

## CAUSES OF ACTION

## COUNT I

## SEXUAL HARASSMENT: VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 USC § 2000e, et. seq.

30. Allgood incorporates by reference the allegations contained in Paragraphs 1-29 of the Complaint as if fully alleged herein.

31. Defendant's actions as described above constitute unlawful sexual harassment in violation of Title VII of the Civil Rights Act of 1964, 42 USC § 2000e, et. seq.

32. As a direct and proximate result of Defendant's actions, Allgood has suffered loss of wages, loss of benefits, mental anguish, emotional distress, personal humiliation, indignity, embarrassment, inconvenience, stigma, pain and suffering and damages to her personal and professional reputations, justifying an award including but not limited to damages for emotional distress, compensatory, punitive and consequential damages against Defendant.

## COUNT II

### NATIONAL ORIGIN DISCRIMINATION AND HARASSMENT: VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 USC § 2000e et. seq.

33. Allgood incorporates by reference the allegations contained in Paragraphs 1-32 of the Complaint as if fully alleged herein.

34. Defendant's actions as described above constitute national origin discrimination and harassment in violation of Title VII of the Civil Rights Act of 1964, 42 USC § 2000e, et. seq.

35. As a direct and proximate result of Defendant's actions, Allgood has suffered loss of wages, loss of benefits, mental anguish, emotional distress, personal humiliation, indignity, embarrassment, inconvenience, stigma, pain and suffering and damages to her personal and professional reputations, justifying an award including but not limited to damages for emotional distress, compensatory, punitive and consequential damages against Defendant.

## COUNT III
### AGE DISCRIMINATION: VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 USC § 2000e et. seq.

36. Allgood incorporates by reference the allegations contained in Paragraphs 1-37 of the Complaint as if fully alleged herein.

37. Defendant's actions as described above constitute age discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 USC § 2000e, et. seq.

38. As a direct and proximate result of Defendant's actions, Allgood has suffered loss of wages, loss of benefits, mental anguish, emotional distress, personal humiliation, indignity, embarrassment, inconvenience, stigma, pain and suffering and damages to her personal and professional reputations, justifying an award including but not limited to damages for emotional distress, compensatory, punitive and consequential damages against Defendant.

## COUNT IV
## UNLAWFUL RETALIATION: VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 USC § 2000e, et. seq.

39. Allgood incorporates by reference the allegations contained in Paragraphs 1-38 of the Complaint as if fully alleged herein.

40. Defendant's actions as described above constitute unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 USC § 2000e, et. seq.

41. As a direct and proximate result of Defendant's actions, Allgood has suffered loss of wages, loss of benefits, mental anguish, emotional distress, personal humiliation, indignity, embarrassment, inconvenience, stigma, pain and suffering and damages to her personal and professional reputations, justifying an award including but not limited to damages for emotional distress, compensatory, punitive and consequential damages against Defendant.

**WHEREFORE**, Allgood requests as follows:

A. Compensatory damages: loss wages and benefits, accumulated sick leaves, medical leaves, 401k match and bonuses, totaling a relief of $300,000.

B. For all counts set forth herein, Allgood asks that this Court order the Defendant to pay liquidated damages of $300,000, for its willful violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C.§ 2000e, et. seq.

C. For all Counts set forth herein, especially Count I, Allgood asks that this Court order the Defendant to pay punitive damages of $350,000 for causing humiliation, embarrassment and frictions in her marriage.

D. For each Count set forth herein, Allgood asks that this Court order the Defendant to pay Allgood's Court fees, expert fees, attorney fees and costs incurred in prosecuting this action, and any other costs and fees deemed proper.

8

## JURY DEMAND

Plaintiff demands a jury for all issues proper to be so tried.

Respectfully submitted

*/s/ Ardra M. O'Neal*
Attorney for Plaintiff
Ardra M. O'Neal, Esq.
(VA State Bar No: 45717)
The O'Neal Firm, LLP
700 12thStreet, NW
Suite 700
Washington, DC 20005
Phone: 1-866-771-0151
Fax: 1-866-771-0151